Good morning. May it please the Court, Matthew G. Holt for the Petitioner. I would like to save three or four minutes for the closing. May please watch the clock. It counts down. Yes, Your Honor. Thank you. So the Petitioner gained three years of formal education in Guatemala. Then he had to leave school in his fourth year of school to take care of his seven younger siblings when his father got hurt. He eventually came to the United States. He's been in the United States for the last 21 years, and he's been eligible for cancellation of removal for the last 11. He has a 14-year-old U.S. citizen daughter, and I believe that the Board of Immigration Appeals erred by abusing its discretion when it took on the role of fact finder, and permissively took on the role of fact finder in determining that he did not satisfy the heavy evidentiary burden of qualifying for cancellation of removal because he failed to satisfy the exceptional, extremely unusual hardship element. However, this was the BIA not looking at the immigration judge's finding of facts but deciding for themselves based on evidence in the motion to reopen. I'd ask that this Court remand the case back to the immigration court so an immigration judge can take testimony and hear evidence regarding how his 14-year-old daughter would suffer if he was removed. Counsel, let me ask you about that in particular, actually. It's my understanding that when the BIA is looking at these sort of things, it gets to assess affidavits and evidentiary material. How is this outside of the record or beyond what they were allowed to see? What specifically are you claiming that they saw that they should not have considered? It's not that they – that's a good question. It's not that they saw what they shouldn't have. It's that they didn't see what the immigration judge could have. In this case, the Board of Immigration – we were instructed with the remand post-Niece Chavez for the Board of Immigration Appeals to review whether he was prima facie eligible. That is to say, did the notice to appear – was it putative? So did it not stop the time period for rule of continuous physical presence? Did he have the requisite good moral character? Did the continuing application – because the 42B application is a continuing application. Qualifying relatives come into the application. Qualifying relatives, unfortunately, leave the application during the course of the proceedings. And whether there was any criminal history that would have prevented him from relief. And so we made a prima facie showing of his eligibility. But we didn't call experts regarding the discrimination. We didn't have his – we didn't have Sheila's mother testify. She's also a Guatemala national. We didn't have Sheila testify. She didn't write an affidavit. We provided just the prima facie eligibility because that's what was expected upon remand. The board should have remanded it further to the immigration court for testimony. And I think with testimony, we would have been able to show that he meets that high threshold. Especially given that he's been here so long and he has limited and distant criminal history. And he has a teenage daughter that is reliant on him. So, Counselor, are you advocating then that every time there's a motion to reopen before the BIA that they remand it to the IJ for further fact-finding? No, sometimes a motion to reopen is based on a change of law and doesn't require that heavy evidentiary. Again, good question. The board doesn't always need to remand because sometimes the board is in a position based on undisputed facts to make a decision. But here, the issue of whether there was the exceptional, extremely unusual hardship are facts in dispute. And the Board of Immigration Appeals cannot impermissibly act as the fact-finder when there are disputed facts. Now, had the government filed a brief saying, yes, everything that was said in the motion to reopen is true, then it might be undisputed. But I still think that the regulations would prohibit the board from acting as a fact-finder. Counsel, this is kind of an oddball question, but are there any other paths for your client that you've been looking at outside of this particular litigation? Is there some sort of visa he can apply for or is there some other way to keep him in the United States that you've been – without blowing up any attorney-client communications? Is there some other path that you're working on for him right now? I think the heart of the prejudice argument in this case, the heart of the ineffective assistance of counsel argument in this case is that this is the path. The prior counsel only pursued withholding of removal and relief under the Convention Against Torture, which would arguably just put him in a position where he could be removed to a third country, just not Guatemala, or potentially have work permits. On the other hand, the application the prior attorney failed to file would have been an application that would have allowed him to become a permanent resident with all the benefits of permanent residency in the United States and in the future citizenship if he was so deserving. The only way that Sheila could sponsor him in the future would be if he left the country and stayed out for ten years. And then after ten years in Guatemala, a place where he has significant fear of harm because of the discrimination of indigenous populations there, a systemic prejudice of indigenous populations there, only then after those ten years and she's at the age of 21 could she sponsor him. So maybe he could come back. If he left tomorrow, he could come back in 2036. But there's no immediate – because sometimes when we have cases like this, there's another thing that they're working on, some sort of other visa process. And they'll say, hey, can you just give us a time because we're trying to sort out this other visa process. It doesn't sound like here that's really happening. No, I wish there was, and if there was, I would have asked for mediation in the case. I'd like to preserve my time. I have one more question for you, counsel. So in their brief, the government argues that you or your petitioner has waived any challenge to the BIA's determination of his withholding of removal claim by not, and I quote, specifically and distinctly arguing why he is eligible for relief. How do you respond to that? Well, he continued to argue that he was eligible for withholding of relief. He continued to argue regarding why the BIA erred in their decision. I would stand on the asylum protection-related arguments in the brief. So what's the best argument for why Quinonez Rose's daughter would face exceptional and unusual hardship if he were to be removed? So I think the best document has to do with a pattern and practice of discrimination. She's an English, Spanish, and Popti, Chacalteco, Popti speaker. Her mother is also from Guatemala with tenuous legal status here. She could arguably be removed. She could arguably have to leave with her mother or her father or even to visit her father, and there is such widespread societal discrimination that she would suffer going to visit him. She would also be afraid for his safety, and that is something that a 14-year-old girl shouldn't have to worry about her dad's safety in Guatemala. So I would look at page 166 of the administrative record. It's the fourth full paragraph, and it's the presidential coordinator against discrimination and racism against indigenous peoples of Guatemala, noting the profound political, economic, social, and developmental inequalities in the country, which explain the discrimination and exclusion that prevails in indigenous areas. And that's kind of exemplified by the fact that the police force in his town back in 2005 got run out, and they never reinstituted a police force where he's from because it was not a priority apparently for their government. So what do you want us to do? What should happen in your view? In my view, I would love for him to have an opportunity to present his case in front of an immigration judge and call witnesses. That's it. Okay. Why don't you reserve the remainder of your time? We'll hear from the government. Thank you. You may proceed. Good morning, Your Honors. May it please the court. Rachel Berman-Vopores, the Acting Attorney General. The court should deny the petition for review. I will begin by addressing the board's consideration of the petitioner's application for cancellation of removal, but I, of course, welcome the court's questions on any of the issues in this case. The board did not engage in impermissible fact-finding in concluding that the petitioner had not shown a reasonable likelihood that he could show prima facie eligibility for cancellation of removal through showing a reasonable likelihood that he could show exceptional, extremely unusual hardship to a qualifying relative. This court requires hardship to deviate in the extreme from the norm to meet the exceptional and extremely unusual hardship level. In his declaration supporting his motion to reopen, the petitioner discussed general financial and emotional hardship that his child would face if he was removed. But the board reasonably concluded that these general statements of hardship were going to be insufficient to show a reasonable likelihood that this hardship would deviate in the extreme from the norm should proceedings be remanded for full factual findings. Generally, the board considers all of the assertions made by a petitioner in a motion to reopen in a declaration supporting a motion to reopen as credible, as true, unless there's some other reason, such as an adverse credibility finding in prior proceedings, which did not happen here. And considering the evidence that the petitioner put forward supporting his motion to reopen, he showed that his daughter would experience hardship, but Congress requires more than hardship. It requires exceptional and extremely unusual hardship. And it was not impermissible fact-finding for the board to conclude that based on the facts that he pro-offered with his motion to reopen, these facts were insufficient to show a reasonable likelihood that he could establish exceptional and extremely unusual hardship below. So the board did not conclude here that he did not establish exceptional and extremely unusual hardship. Instead, the board concluded he failed to meet the very low threshold of showing a reasonable likelihood of meeting that standard should proceedings be remanded, which was certainly within the board's authority and is required in assessing prima facie eligibility, as this court discussed in Fonseca Fonseca. Unless there's any additional questions on that issue, I will briefly move to discuss. What about, so the BIA said, found that there was not exceptional and extremely unusual hardship based on the fact that the respondent had not submitted sufficient evidence or enough evidence of this, of the hardship. But your friend on the other side is saying, well, but the BIA isn't the fact finder, so they should have remanded to the IJ to, so that he could submit evidence of exceptional and extremely unusual hardship before the IJ. And the IJ could make those findings, not the BIA, on the basis of just the motion to reopen without additional evidence. Well, I disagree, Your Honor, the board. Why? Respectfully, the board didn't find that he didn't show exceptional, extremely unusual hardship. He didn't show the board concluded he didn't demonstrate a reasonable likelihood of showing exceptional, extremely unusual hardship. I just want to qualify that first. Okay. And in a motion to reopen, the petitioner does have to pro-offer facts, showing that he's prima facie eligible. It's not enough just to say, I've shown exceptional and extremely unusual hardship. Oh, yeah, of course. But he's, that's not the point. He's saying that the board should have remanded so he can introduce that evidence. Well, if he had pro-offered facts in his declarations, indicating that that evidence existed, then the board may well have done that, Your Honor. But the standard for exceptional and extremely unusual hardship in the circuit is that it needs to deviate. It needs to be hardship that deviates in the extreme from the norm. So if the board had concluded that, so where the board just said that the hardship wasn't sufficient, the board is just saying that based on what he pro-offered, he didn't show anything beyond hardship. And hardship is not the statutory requirement. Exceptional and extremely unusual hardship is. So if he had shown something that got him just past the usual hardship that one would expect any child to experience when their parent is removed, then I may well agree that more fact-finding would be needed here. But the petitioner had the opportunity to submit a declaration from his child's mother if he wanted to. There was nothing that stopped him from providing a more detailed explanation about what his daughter would experience or providing a declaration from his daughter. I'm not saying that he had to provide all of the evidence regarding hardship. But he did need to show enough to meet the reasonable likelihood threshold that he could show this high level of hardship. So the board behaved appropriately here and reasonably concluded that based on the petitioner's statements showing that his daughter would experience financial hardship and emotional hardship, which is what anyone would generally experience a child, would expect a child to experience if their parent is removed, wasn't enough to show reasonable likelihood that he could show more in terms of severity of hardship. So the board did not overstep its authority here. And after all, these general assessments of the evidence is necessary for the board to adjudicate a motion to reopen or else anytime there is a factual question, the board would be required to remand to a motion to reopen, even when it's clear that the facts are not going to be enough to meet the standard. And that's not required by the statute or the regulations, the framework for assessing a motion to reopen, which is court fairly recently clarified in Fonseca. It explained that just in assessing whether a petitioner has shown a prima facie eligibility, all they need to do is show a reasonable likelihood that they could establish that they would succeed on the merits, a very low standard. And that is what the board applied here. So, counsel, in your view, what if someone was going to make the showing required for the extreme circumstances, can you give us an example of what that would be like? How extreme would it have to be? What was the real life example? For example, that his child has a medical condition that they do not believe could be appropriately treated in Guatemala, that would require fact findings like how severe the the the illness is, the medical condition is and how that could be assessed in the petitioner's home country. Again, so they're not required to show that this is the type of condition that is severe enough to meet the exceptional, extremely unusual hardship question. It just presents an issue that more fact where more fact finding is needed to determine if it's going to meet the threshold or not. While here we have generally the child will experience financial hardship and emotional hardship, which is completely understandable, and I do not mean to minimize it, but the standard requires such a high level of hardship here that there's there's nothing to no reason for the board to think that there's more here to discover such that it would allow the petitioner to meet the high threshold. Unless the court has any other questions on this issue, I will briefly turn to the panel's question about the government's argument that the petitioner forfeited or challenging the merits of the agency's denial of his original claim for withholding of removal. There, the agency concluded that the petitioner did not show that he was a member of a recognizable particular group or a nexus between any of his proposed groups and a protected ground. And the petitioner does not argue or argue why he met the requirement. He conclusionarily says he says that he did, but he doesn't show facts in the record explaining why. The petitioner fears one person and was targeted by one person, but all of the particular social groups that he pro-offered to the immigration judge are all based on gangs, gangs recruiting him, fearing gangs will retaliate against him or his family. But there's no evidence that the petitioner was threatened or harmed by gangs or fears harmed by gangs. He just fears this one particular individual, although his asylum applications before the asylum office and the immigration judge did talk about a fear of gangs and that the individual petitioner fears was part of a gang. He seemingly withdrew that before the immigration judge because when asked about the difference between his in-court testimony and his applications, he explained that everything he told the immigration judge, he told the people who are preparing his applications, and he does not know why they are different. And because of that, the immigration judge just credited the petitioner's testimony. And based on his testimony, he fears one person who wanted him to sell drugs and is angry that the petitioner did not agree. And so because of that, the agency found he did not show that he is a member of any of the pro-offered groups he pro-offered, putting aside the fact about whether they're recognizable or not, or that there was a nexus between a particular social group and the harm he experienced and fear. And while the petitioner argued around that, he did not meaningfully engage with the agency's decision or explain what group he is a member of that the agency should have found or concluded. And so for that reason, the government believes that the petitioner forfeited, arguing the merits of his original withholding claim. Unless there are any further questions from the court, I will briefly conclude. The court should deny the petition for review. The board did not abuse its discretion in denying the petitioner's motion to reopen, where he did not show his former counsel's conduct was egregious and did not show a reasonable likelihood that he could establish exceptional, extremely unusual hardship to a qualifying relative. And substantial evidence supports the agency's denial of his claims for withholding of removal and protection under the Convention Against Torture. I thank this court for its time and for permitting me to appear remotely. Thank you, counsel. Mr. Holt, you have rebuttal. Thank you. So just very quickly, I know that hindsight is 20-20, but we also make decisions based on the facts available to us. Now, this is the second petition for review because the first one was remanded. It was remanded by respondents' unopposed motion to remand. But when we look at the language of their motion to remand, that is what helped determine the level of evidence that was going to be submitted to the Board of Immigration Appeals. This was an unopposed motion, and we filed the evidence to show prima facie eligibility, a reasonable likelihood, a one-in-ten chance, an opportunity showing that he was statutorily eligible. In the unopposed motion for remand, it just said give the board the opportunity to consider and analyze underneath Chavez whether petitioners are able to establish eligibility for cancellation, not success, just eligibility to be heard. And that's what we did. To say now that maybe we should have submitted additional affidavits and expert witnesses and psychological evaluations and additional documentation regarding what would happen if Shayla traveled to Guatemala to visit her dad, that was beyond the scope of what we had agreed to in the unopposed motion to remand. And so we did what we thought best for him, and now we're being told we should have done differently. You should have done more, they're saying. They're saying you should have put in something that would make the hardship to Shayla exceptional as opposed to what the board thinks is run-of-the-mill financial and emotional hardship. If I had known that the board was going to fact-find to the extent that it would have, then I would have tied a sharper line between the discrimination and abuse and travel warnings for U.S. citizens traveling in Guatemala and the terrorist designations for groups operating with impunity in Guatemala. But instead we just included all of the indigenous persecution and discrimination documents because that relates both to his daughter and also to him. Was his being indigenous part of one of the particular social groups that was given? So we argued his race should have been put into argument in the initial I-589 application by prior counsel. We argued that failing to consider his race was ineffective assistance, and that's what led to the first petition for review. And then it was remanded right after Anis Chavez, and then there became these two separate applications. And honestly, the cancellation and removal application I think is quite a bit stronger, but it is stronger because of the asylum withholding protection argument because that is exceptional. It's not sending someone to somewhere where they won't have discrimination and persecution and someone who wants to kill them. This is a unique situation. This is extraordinary. But again, the immigration judge should find those facts. Even if we look at Madre Brasinas, which is one of the big BIA cases on hardship, they're reviewing the fact-finding of the immigration judge to determine if the factors for Montreal have been met. They're not determining for themselves. And again, this is a continuing application. So she was seven at the time that he was in proceedings before. She's 14 now. If the case gets remanded, she might be 16. And there's a lot of things that can happen to someone. And the law is written for this application to be a continuing application and not be set in stone that the hardship only exists on this single day. Sometimes I wish it did. Okay. So you're saying that you were misled by the language in the remand order? I think that's what led you. Maybe not misled. Maybe that's strong. But that's what led you maybe to not put on the best showing you could have put on at this point in the procedure. I think that we operated in unison with the Department of Justice in the motion after Niess Chavez to determine whether or not he was statutorily eligible for. He met the continuous presence element. Right. And that was the only factor. That was the only issue from before. It was just whether it was a stop time issue. And this notice appeared clearly was putative, so it didn't stop time. There's no discussion in Niess Chavez as to and what about the hardship too. So we operated under that understanding. Fortunately, we still did put a lot of evidence into the motion to reopen, and we did brief on remand. In your view, the fact of being indigenous and having had past persecution ought to weigh into the hardship determination. Absolutely, because the country conditions where the person will be removed is a hardship factor, and family going to visit him there is a hardship factor. I do hope that he gets his opportunity to be heard on this application in court. I want to thank you all for your time. Thank you very much. Queen Ones versus will be submitted. We will take up Mason versus the Comber. The Comber.
judges: WARDLAW, OWENS, ALBA